ELBERT O. FARRAR, as Trustee, etc., Appellant, *v.* ALEXANDER McCUE, Respondent.

The will of J., after various legacies, gave his residuary estate to three children named; the executors being directed to invest and keep the same invested, to apply the interest to the support and education of said chil-

dren until they respectively arrived of age ; after that to pay to each the interest upon one-third, and after the death of two of the children to divide the principal between the survivor and the heirs of the two deceased. The executors were empowered to sell and convey the real estate and to invest the proceeds for the purposes of the will. One of the executors died, the others, after paying debts and legacies, and settling the estate in all respects, except as to the sale and distribution of the proceeds of the real estate, resigned. Their resignation was accepted by the Supreme Court and two more trustees were appointed; at this time the three children were living and all were of age. *Held,* that conceding the executors were merely donees of a power of sale, it was a general power and imperative, and so subject to the same statutory provisions as to the substitution of new trustees as are applicable to express trusts ; that the new trustees therefore were lawfully substituted and had power to convey ; also that the trust or power was not ended by the payment of debts and legacies and settlement of the executors' accounts, as the principal purpose of the will yet remained to be carried out.

F. and H., the new trustees, united in a conveyance of the real estate to E., one of the children interested in the residue, who gave a mortgage thereon, and afterward conveyed it to F. as trustee, H. having meanwhile resigned. F. contracted to sell to defendant subject to the mortgage, he agreeing to have H. join in the deed and also to procure a deed from E. of any interest he might have. Defendant declined to complete the purchase claiming, aside from want of power in the trustees to sell, the sale to E. was only colorable ; that the reconveyance subject to the mortgage was unauthorized, and that the resignation of H. was ineffectual because the order accepting it did not show on its face that it was an order of the court. On submission of the controversy under the Code, *held,* that the objections, if tenable, were obviated by the offer to have E. and H. join in the conveyance, and that the title which the testator had could thus be vested.

(Submitted April 24, 1882; decided May 5, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, in favor of defendant, entered upon an order made February 18, 1882, upon a case submitted under section 1279 of the Code of Civil Procedure. The controversy was as to whether defendant, who had entered into a contract with plaintiff, as trustee under the will of Abram W. Jackson, for the purchase of a house and lot of which the testator died seized, was bound to complete the purchase. The will of Jackson after various legacies contained this clause :

" *Sixth.*—I give, devise and bequeath all the rest and residue of my estate, both real and personal (after the payment of the above legacies), to my three youngest children, Abram W., Ida Amelia and Ernest in fee. And it is my will, and I do hereby direct my executors to invest all the said rest and residue of my estate either in real estate or in bonds and mortgages and to keep it so invested from time to time, and apply the interest thereof to the support, maintenance and education of my said three children until they shall respectively arrive at the age of twenty-one years, and after they shall respectively arrive at the age of twenty-one years, then it is my further will that my said executors do pay to each of them the interest of his or her respective one-third of said rest and residue, it being my intention to declare hereby that my executors shall pay the said interest to each of my said children as he or she shall arrive at the age of twenty-one years, and that before said time it shall be expended by said executors for the maintenance and education of said children, as long as they remain respectively under the age of twenty-one years. It is my further will that the interest only and no part of the principal of said rest and residue of my estate shall be paid or distributed to my said children so long as any two of them shall survive, and that after the death of any two of my said children the principal and capital of said rest and residue of my estate shall be equally divided between the survivor and the heirs of the two deceased children, it being my intention hereby to devise and bequeath to each of my said three youngest children one equal third of the said rest and residue of my estate, and that, upon the death of each one of them, his or her heirs shall receive the share to which his or her ancestor was entitled.

" And I do hereby authorize and empower my said executors to sell and convey my real estate for such prices as they shall deem proper, and in fee-simple or any less estate, and to invest the proceeds from time to time in bonds and mortgages or in other productive real estate, for the purpose of carrying out the intentions of this will."

Three executors were named in the will, all of whom quali-

fied ; one of them died prior to 1879. In that year the other two executors, having paid all the debts and legacies without a sale of the real estate, and having rendered a final account as executors, made application to the Supreme Court to be discharged from the trusts, in which application the three children of the testator, who were then of age, joined. By order of said court the application was granted, and Elbert O. Farrar, the plaintiff, and Frederick R. Hawley were appointed executors and trustees ; afterward Hawley made application for leave to resign. The submission contained a copy of an order granting the application, signed by a justice of said court, but not showing on its face that it was an order of the court. Plaintiff and Hawley conveyed the premises in question to Ernest M. Jackson, in December, 1879, who thereafter gave a mortgage thereon for $5,000, and afterward reconveyed subject to the mortgage to plaintiff as executor and trustee. Plaintiff contracted to sell and defendant to purchase subject to the mortgage ; the latter refused to complete his purchase upon the grounds that neither the plaintiff alone nor in conjunction with Farrar had any power to convey under the will ; that the conveyance to Jackson was colorable only and not a valid execution of the power ; that the purchase by plaintiff of Jackson was not an investment of the funds as prescribed by the will. Plaintiff offered and agreed to procure Hawley to join with him in the deed and also to procure and deliver a deed from Jackson of any interest he might have.

*E. H. Benn* for appellant. The question is, whether the executors have been discharged, and whether or not Mr. Farrar is now trustee. (*Milbank* v. *Crane*, 25 How. 192; *McMurray* v. *McMurray*, 66 N. Y. 175.) No matter what words a testator uses to express his intention, his intention, when it can be ascertained, must govern, and what he intended by the words used is his will. (*Dubois* v. *Ray*, 35 N. Y. 167; *Post* v. *Hover*, 33 id. 593; *Roome* v. *Phillips*, 24 id. 468.) If by the terms of a will a testator gives property to his heirs in fee, and then in the same will gives to his executors control of the prop-

erty with power to sell, they (the executors) take the fee instead of the heirs. (*Brewster* v. *Striker*, 2 N. Y. 19, 28; *Tobias* v. *Ketchum*, 32 id. 319, 331 ; *Van Nostrand* v. *Moore*, 52 id. 18.) The fee then was given to the executors as trustees. (*Morse* v. *Morse*, 85 N. Y. 53.)

*J. C. Bergen* for respondent. The direction to the executors to sell was simply a power. (R. S., part 2, chap. 1, title 11, art. 3, §§ 95, 127.) Under the provisions of the will no estate vests in the executors, they are simply the grantees of a power. (*Smith* v. *Brown*, 35 N. Y. 89.) The power in the executors is a general power in trust, which the executors could exercise. (R. S., part 2, chap. 1, title 11, art. 3, § 115; *Kinnur* v. *Rogers*, 42 N. Y. 535.) The direction to sell is for the benefit of devisees not legatees, and consequently not within the statute. (*Lang* v. *Ropke*, 5 Sandf. S. C. 303.) A testator may give to his heirs an absolute fee, and at the same time give to his executors a power to sell and pass the entire title. (*Reed* v. *Underhill*, 12 Barb. 113 ; *Crittenden* v. *Fairchild*, 41 N. Y. 289 ; *Downing* v. *Marshall*, 33 id. 380, 381 ; *Garvey* v. *McDevitt*, 72 id. 563 ; *Johnson* v. *Reeves*, 48 How. 505.) So far as the real estate is concerned the executors were trustees and held it as such, and when they resigned and were discharged, it was proper and legal for the court to appoint one or more trustees to carry out the trust. (1 R. S. 730, §§ 69, 71; *Leggett* v. *Hunter*, 19 N. Y. 445 ; *Quackenbush* v. *Southwick*, 41 id. 117; *Broman* v. *Broman*, 48 How. 481.)

FINCH, J. It is unnecessary to determine whether the executors under the will of Jackson took a legal estate in the rest and residue devised, or were merely donees of a power of sale given them to aid in the ultimate distribution. In the one event they took the fee as trustees, and no estate in the land went to the heirs at law by descent or devise ; and in the other the fee passed to the devisees under the provisions of the will, but in either case the executors were at liberty to convey and could transfer a valid and perfect title to a purchaser. There

were three of these executors. One of them died, leaving the survivors with an unexecuted trust. But these after paying debts and legacies and settling the estate in all respects, except as to the authorized sale and distribution, resigned, and their resignation was accepted by the Supreme Court, which had authority to relieve them from their position. (1 R. S., part 2, chap. 1, title 2, § 69.) By death and resignation no acting trustee remained, and the court was at liberty to appoint new trustees. (§ 71.) Farrar and Hawley were accordingly appointed by an order made at Special Term, and they thus became vested with the power and authority originally given to the executors, unless the first objection made on behalf of the appellant is sound. That is, that the executors under the will had only a naked power of sale which amounted to a personal confidence and trust, and which could not be vested in any new or substituted trustees. But no discretion was given to the executors, nor any choice among beneficiaries. We have recently held that such a trust power as here existed, if no trust estate was created, is a general power in trust and imperative, and subject to the same provisions as to the substitution of new trustees as are applicable to express trusts. (*Delaney* v. *McCormick*, MSS., Feb. 28, 1882.*) Farrar and Hawley, therefore, were at the date of their appointment lawfully substituted as trustees and had power to convey. (*Crittenden* v. *Fairchild*, 41 N. Y. 289; *Leggett* v. *Hunter*, 19 id. 459.) They now offer to deed to the purchaser who is willing to buy, but doubts the safety of the title proposed to be given.

It is very certain that if they cannot convey a good title, it is because they have lost the power to do so by something which has occurred since their appointment, for when that was made they were legally trustees under the will, and had full power to sell the land and convert it into money for the purpose of investment and distribution. The conclusion of the General Term to the contrary goes upon the ground that because the executors had paid all debts and legacies prior to a disposition of the residue, and settled their accounts before the .

---

* 88 N. Y. 174.

surrogate, the trust was at an end and nothing remained to be done for which a trust estate or a power in trust was essential. Such view of the will overlooks its principal purpose, and the most important duty imposed upon the trustees. It remained for them to sell the real estate, to convert it into money, to invest it as directed, to apply the interest to the support and education of each of the three children until twenty-one, at that age to pay over the surplus of interest accrued, and thereafter to pay the interest annually so long as any two of the children survived, and, when only one was left, to make the final distribution. This disposition of his property was the paramount and principal purpose of the will, and so far from being ended has only just begun. The executors and the court both realized the fact when permission to resign was asked. The former put their request upon the express ground that at their age they could not expect to live to carry out their trust; and although they did say in their petition that their duties as executors had been fully performed, and the estate had been duly administered, they plainly recognized and distinctly said that their duties as trustees to carry out and perform the trusts imposed by the will upon the residuary estate remained. We can discern no possible ground for saying that these trusts ended, because debts and legacies had been paid, and the earlier duties of the executors had been performed.

The trust, therefore, remained. Death and resignation took away the trustees. The court properly appointed successors, and these in the moment of their appointment were fully authorized to sell and convey. What they did was this: they united in a conveyance to Ernest M. Jackson, who was one of the devisees interested in the residue. He gave a mortgage upon the property, and then reconveyed to Farrar as trustee, his associate trustee, Hawley, having in the mean time resigned. Two things are said about this transaction. It is claimed that the sale to Jackson was only colorable, and not a valid execution of the power. That may or may not be true. There are no facts to justify any such determination. They reach no further than to suggest possibilities about which it is not our

duty to speculate. But since Jackson proposes to join in selling to the purchaser, the inquiry is of no consequence. The deed of the trustees was either absolutely void, or voidable, or good. If it was void the power of sale has not been executed, the right to convey for the purposes of the will remains in the trustees, and they can make a good title to the proposed purchaser. If it was voidable, the grantee took subject to avoidance, which would still leave the power of sale unexecuted, and that duty remaining to be performed. If it was good the title passed to Ernest M. Jackson, and if his reconveyance to the trustee subject to the mortgage was unauthorized, the title remains in him. So that, in any event, a conveyance by the trustees and their grantee will cover the entire interest, subject to the mortgage, and provide against all the suggested difficulties. It is further said that Hawley's resignation was ineffectual, because the order accepting it does not, on its face, show that it was an order of the court. But if that be true he remains trustee, and the trouble is obviated by an offer to have him join in the conveyance. In this view of the case it is apparent that the title which the testator had at the time of his death ·can be vested, subject to the effect of the outstanding mortgage, in the purchaser, and he should be required to complete his purchase.·

The judgment should be reversed, and defendant directed to perform his contract accordingly.

All concur, except MILLER, J., absent.

. Judgment accordingly.